## No. 6449.

SUCCESSION OF CELESTINE DORVILLE, WIDOW OF FELIX HENRY LOZE.

The executor of a succession which embraces a plantation among its assets is
authorized to employ a competent person to take charge of the plantation, and
keep its improvements in proper repair, when it appears from the evidence that
it was impracticable to lease the place, and that the services of the keeper enured
to the benefit of the property in his charge. A reasonable compensation to the
keeper, in such a case, will be allowed as a privilege debt of the succession.

APPEAL from the Second District Court, parish of Orleans. *Tissot,*
J.

*John S. Tully & C. E. Schmidt,* for appellant.

*J. Duvigneaud* and *W. E. Murphy* for appellee.

The opinion of the court was delivered by

EGAN, J. This is an appeal by one Dorville from a judgment of
the Second District Court of Orleans, disallowing an account in his
favor of $689, less a credit of $310, for which amount he was placed
upon the account and tableau as a privileged creditor, the same being
for fees as keeper of the residence and farm of decedent, a short
distance below the U. S. Barracks, and near the Slaughterhouse, on
the river front, under employment as such by the executor by special
contract at the rate of $1 per day from seventeenth December, 1873, until
the property was sold in the fall of 1875, the sixth of November. There
is no dispute as to the time during which the appellant acted as keeper,
and for which he charged in the account. The opposition is based upon
the alleged fact that no keeper's fees at all should be allowed, because it
was not necessary to incur the same—that other persons than Dorville
could have been had to act as keeper without charge, and that the place
could and should have been rented or leased out and thus the expense
of a keeper avoided. The contract with Dorville and the regular and
faithful rendition of the stipulated service by him are clearly proved, and
not denied by any witness or contradicted by any evidence.

The duties of the keeper were to take care of the farm—to keep in
repair the fences, which were numerous, old, and in bad repair. Besides
the front and side fences, the latter of which were common to adjoining
farms, there were several cross fences, besides the back fence. He also
was charged with the duty of caring for and selling fruit from the place,
of which there was considerable quantity and variety, and also to attend
to the cattle and pasturing of cattle for pay upon the place, for which
purpose pastures upon it were designed and used, it being very near the
Slaughterhouse, and, therefore, convenient for that purpose.

The keeper performed all these duties faithfully and to the satisfac-
tion of the executor, who frequently visited the place, and who required

of Dorville, and was furnished by him with a regular account of all cattle pastured upon the place, which furnished with the fruit sold, considerable revenue. Dorville also supervised one or two small tenants on the place, and collected the rent from them for the executor. The latter swears that he selected him because he knew him to be a man upon whom he could rely, and that he was a thoroughly honest man. The mere repair and keeping up of the numerous fences in their condition, and which it is evident was absolutely required in order to save the heavy expense of new fencing, and for the care of the place, occupied the keeper from four to six hours each day. His attention on the place was constantly required for its mere preservation, and that of the fruit, cattle, etc., and he could not and did not, by reason of this employment, seek or pursue other occupation for a livelihood. He was a relative of decedent, and had lived upon the place with her prior to her death, and it seems to us that he was every way a suitable and efficient person for such employment, and that he performed his duties faithfully.

It is true that two or three witnesses swear that they either had or knew of other farms upon which there were either no keepers or persons who lived upon them for the privilege of cultivation and were charged with the duty of keeping up the fences. These places were not, however, used for purposes of pasturage for hire, nor is their similarity in the nature and extent of the fencing upon them shown, neither is it stated that there was upon them fruit, either to be sold or cared for, nor is any thing said of the character or number of the houses upon them. Some of them are said to be several miles from the city, and they did not belong to successions, but to living persons who could themselves see to or care for them and make their own contracts. One witness mentions the proximity of this farm to the Slaughterhouse and to the city railroad as reasons why it did not require a keeper, and why one living upon the place could have got other employment.

We think the facts stated, together with the other evidence in the record of the uses to which the place was put (to afford pasturage to the cattle designed for slaughter) and the exposure of the fruit and everything about the place to plunder, loss, or destruction, from its being in a thoroughfare and near much frequented places and with ready facility of approach, really made the employment of a keeper all the more necessary. Indeed, the evidence shows that Dorville was more properly a managing agent than a mere keeper. As to the charge that the executor ought to have lived on the place, his reason for not doing so is very satisfactorily shown.

The Citizens' Bank had a mortgage upon it which was continually threatening foreclosure and under which the property was ultimately sold after having been once before seized at a time when the property

Succession of Dorville.

would have been sacrificed and when a sale was only prevented through the intervention of the executor in order that the property might bring a better price. The wisdom of this course is demonstrated by the fact that in the opinion of both parties it appears the property would not, when first seized, have brought more than, if so much as the mortgage debt; while, when it was sold, it brought very considerably more ; enough to give rise to the present controversy by a creditor who otherwise would have had no interest.

The executor testifies that he could not make a yearly lease of the house or farm by reason of the constant threat and danger of foreclosure, and that he tried to effect a lease by the month and failed, as we can understand he might well do with a predial estate.

Another witness swears to the difficulty of making a lease otherwise than by the year, while the fact stated by the opponent's witnesses that they knew of other neighboring farms which were occupied and kept simply for the privilege of cultivation and with the obligation to take care of the fences without charge but also without revenue, (a fact which we can readily understand at that time of depression and prostration of material interests of every kind), really furnishes in itself a strong and satisfactory reason with the others already stated why the executor did not lease the place. He says he tried and could not do so ; these facts support him in his statement ; no witness contradicts the fact stated. It is not shown that any one was ready or willing to lease the place, and we have nothing to weigh against this uncontradicted affirmative, positive evidence, except negative testimony and the *mere opinions* of other persons, unsupported by any affirmative fact that the place could have been leased.

The executor appears to have exercised both good judgment and discretion in the selection of Dorville as keeper, and both he and Dorville appear to have been careful of and watchful over the trusts confided to them ; there is nothing to impugn the good faith of the executor in regard to the employment and payment of a keeper. Much greater loss might well have occurred to the succession and creditors had he not done so, and even had he leased the place we doubt whether greater advantage would have resulted to the succession. Indeed, from the extent and bad condition of the fencing and the leaky condition of the roof of the house, not only was the difficulty of leasing increased, but from the public and exposed position of the property, all of the improvements were exposed to waste and perhaps absolute destruction by fire or plunder for fuel and other purposes, in close proximity as it was to the city proper and to public places, and on a public thoroughfare. The reasonableness of the price paid and value of the service rendered are sufficiently established, and the employment seems to have been proper under the

circumstances of this case to have been made in the exercise of a reasonable discretion on the part of the executor, and to have been both designed and to have resulted in benefit to the succession. The mere fact that the executor had filed two former partial accounts of the succession in which this claim does not appear, does not, in the face of the facts in the record, afford any sufficient reason of objection to his placing it upon this, his final account and tableau, and with its proper rank as a privileged claim, it being a reasonable, and, we think, a necessary expense incaring for and preserving the property of the succession, and the keeper having also, while discharging that important duty, added to the revenues of the estate.

It is therefore ordered, adjudged, and decreed that so far as relates to the claim of Dorville, as keeper of succession property, and any payments made to him by the executor on that account, that the judgment of the court below be avoided and reversed and the claim be re-instated upon the account and tableau as a privileged debt or expense of the administration as originally entered upon it by the executor, and that he be ordered to pay the same as stated by him in due course of administration as such.

It is further ordered that the opponent pay the costs of his opposition in both courts.